IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

**JASON CRAWFORD v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rutherford County**
**No. F-54966 PC     Don R. Ash, Judge**

_____

**No. M2004-01541-CCA-R3-PC - Filed October 11, 2005**

_____

The petitioner, Jason Crawford, appeals the denial of his petition for post-conviction relief.  The single issue presented for review is whether he was denied the effective assistance of counsel.  The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and J.C. McLIN, JJ., joined.

John Dixon, John H. Baker, III, and Donald M. Bulloch, Jr., Murfreesboro, Tennessee, for the appellant, Jason Crawford.

Paul G. Summers, Attorney General & Reporter; Benjamin A. Ball, Assistant Attorney General; and Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In 2002, the petitioner was indicted for first degree murder, felony murder, especially aggravated robbery, and conspiracy to commit robbery.  The state filed notice of its intent to seek punishment of life without parole.  On January 13, 2003, the petitioner entered into a plea agreement whereby he entered pleas of guilty to second degree murder and conspiracy to commit aggravated robbery.  The trial court imposed concurrent sentences of forty years at one hundred percent and three years at thirty percent, respectively.  The remaining charges were dismissed.

On November 25, 2003, the petitioner filed this petition for post-conviction relief alleging, among other things, that he had been denied the effective assistance of counsel.  The post-conviction court appointed counsel.  In an amendment, the petitioner specifically alleged that his trial counsel had failed to advise him of potential defenses, including a claim of self-defense, and that trial counsel had failed to adequately develop those defenses in preparation for trial.  In the amended

petition, the petitioner also alleged that trial counsel was ineffective for having failed to seek the suppression of incriminating statements the petitioner had made to police.

At the time the petitioner entered his pleas of guilty, the facts of the crimes were stipulated as follows:

[O]n or about the [eighteenth] day of March 2002 . . . [the petitioner] and Mr. Unte Henderson[] met [the victim] at the Hooker's Bait Shop and Tackle Shop . . . in Rutherford County . . . Tennessee. There was a disagreement there and sometime during this disagreement [the petitioner] . . . fatally shot [the victim] two times with a [.]380 caliber handgun, which was later found in a body of water and later recovered by Detective Jack Kesling.

Mr. Henderson's part is apparently [that] he held [the victim] down on the ground while [the petitioner] searched [the victim's] vehicle and also his person. And they did take stereo equipment, numerous personal belongings[,] . . . money[,] and . . . his MTSU [identification card].

There was bloody clothing recovered from the dumpster [that] Mr. Henderson had thrown away. Also along [with] that bloody clothing [were the victim's] belongings, including his MTSU identification card.

After all this had happened . . . they did flee the scene and left [the victim] there . . . . The police responded and they found that he had basically bled to death. He had been shot twice.

Through the investigation two suspects developed, [the petitioner] and Mr. Henderson, [and] both of the suspects were interrogated by the police. They did give statements amounting to what the state believes would be confessions, admitting their part in the robbery and the homicide.

At the evidentiary hearing, the petitioner, who alleged that he had been misadvised as to the elements of felony murder and to his potential defenses to that charge, called his trial counsel as a witness in an effort to demonstrate her lack of preparation. Trial counsel, who had been retained by the petitioner rather than appointed, testified that she had received a large amount of discovery materials from the state, which included three to four hundred pages of typed information and several videotapes. She stated that she had consulted in advance of the trial with the attorney that represented the co-defendant, Henderson, who eventually entered into a plea bargain that included an agreement to testify against the petitioner. Trial counsel recalled that as a part of her preparation, she reviewed the videotapes and arranged with the sheriff's department for the petitioner to do so as well. She stated that the petitioner had informed her that he and Henderson had planned to purchase drugs from the victim and that Henderson wanted to "short" the victim, implying that he intended to pay less than the actual cost. Trial counsel also recalled that she had informed the petitioner some two weeks prior to trial that Henderson had pled guilty to second degree murder and had agreed to testify for the state in the petitioner's trial. She remembered that it was only two days later that the state made an offer to the petitioner to plead guilty to reduced charges.

Trial counsel stated that she received some discovery materials only three weeks before trial and had planned to file a motion to continue based upon the tardiness of the filing until the petitioner decided to accept the state's offer of the plea agreement. After the agreement was offered by the state, trial counsel stated that she advised the petitioner that he had a strong defense to first degree murder based upon the lack of proof of premeditation but that the felony murder charge would be difficult to defend because of the robbery. Trial counsel specifically recalled having reviewed the content of the applicable statutes with the petitioner in advance of his acceptance of the plea agreement. It was her opinion that had the robbery occurred after the murder, the jury could still have found the petitioner guilty of felony murder. She confirmed that the petitioner had informed her that he was aware beforehand that Henderson intended to shortchange the victim in the drug transaction.

Trial counsel stated that the discovery documents verified that a black and silver folding knife was found at the scene of the crime and that the petitioner, who had explained that he was carrying a gun that night because of a rumor that someone was after him because of a prior drug transaction, had claimed to her that he was fearful of the victim. Trial counsel acknowledged that the petitioner had said that after Henderson "shorted" the victim, the victim walked back toward his car and the petitioner, fearing that the victim might retrieve a weapon, then shot him twice. According to trial counsel, however, the petitioner never claimed that the victim had a weapon and only expressed concern that he might make an effort to acquire one.

During cross-examination by the state, trial counsel acknowledged that in the statements made to the police, neither the petitioner nor Henderson alleged that the victim had a knife in his possession. It was her recollection that when the police found the pocket knife, the blade was not open. She recalled that photographs taken at the scene documented that fact. Trial counsel confirmed that the petitioner had admitted firing the two fatal shots. She also testified that neither the petitioner nor Henderson offered to call for medical assistance after the victim had been shot.

The petitioner testified at the evidentiary hearing that he first saw his trial counsel in August of 2002 before entering his pleas of guilty on January 14, 2003. He acknowledged that he had an opportunity to review the discovery materials, including the videotapes, in advance of the trial. The petitioner recalled that his trial counsel recommended acceptance of the plea agreement because of the likelihood that he would receive a life sentence without the possibility of parole. He claimed that he and his trial counsel never discussed self-defense as a potential defense and that she failed to point out the contradictions between the statements he had made to the police and the statements he made to her as counsel. The petitioner contended that he entered into the plea agreement based upon the advice of his counsel that he would likely be found guilty of felony murder if he went to trial.

Upon questioning by the post-conviction court, the petitioner admitted that during his guilty plea hearing, he had testified that his trial counsel had explained possible defenses and that he was satisfied with her representation. The petitioner had also expressed an understanding of his rights and represented that he had pled guilty to the charges because he was in fact guilty as charged.

-3-

The petitioner testified that he had no intentions of robbing or stealing anything from the victim until after the shooting and that based upon those facts, he believed that he had a defense to felony murder. Contradicting his trial counsel's assertions, he denied that he was aware Henderson intended to "short" or cheat the victim before he purchased the drugs. The petitioner stated that had he known that there were potential defenses to the felony murder charge, he would have insisted upon having a trial.

The petitioner testified that he told his trial counsel that after the victim was shot, he took the wallet while Henderson held the victim down. He acknowledged that he made the same statement to the police but insisted that he initially informed his trial counsel that Henderson had actually taken the wallet from the victim's pocket. According to the petitioner, no more than five or ten minutes passed from the time he arrived at the crime scene until he left.

On cross-examination, the petitioner admitted that he had made false statements to the police but maintained that he had been truthful with his trial counsel. He admitted that he did not see the victim's pocket knife on the night of the shooting. The petitioner also acknowledged that he was aware that there were witnesses that were going to testify that he was in possession of the victim's bloody identification card and had stated in the presence of others that he had killed the victim. He admitted that he took the victim's CDs, compact disk player, and cell phone. The petitioner also acknowledged that he did not call 911 and conceded that had he done so, he might have been able to save the victim's life. The petitioner, who was aware that there were witnesses prepared to testify that before the shooting he had said, "I'm going to go hit a number," denied that he had actually made the statement. He understood that such a statement implied that he intended to kill someone. The petitioner conceded that he was drinking at the time of the shooting.

At the conclusion of the evidentiary hearing, the trial court ruled that the petitioner had failed to establish that trial counsel was deficient in her performance. The post-conviction court also concluded that the petitioner had failed to demonstrate that there was a reasonable possibility that but for any errors on the part of trial counsel, he would not have entered the guilty pleas and insisted on going to trial.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently and, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, (1985).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

With regard to the duties of defense counsel, our supreme court held in State v. White, 114 S.W.3d 469 (Tenn. 2003), as follows:

> "[T]he basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused's counselor and advocate with courage and devotion and to render effective, quality representation." See ABA Standards for Criminal Justice 4-1.2(b) (3d ed.1993). This duty requires defense counsel to exert every reasonable effort to protect the client's interests, both in the investigation and

the trial of a case, by interviewing the client; apprising the client of his or her rights; conducting a thorough legal and factual investigation of the case; attempting to obtain information in the possession of the prosecution and law enforcement authorities; filing appropriate motions for the suppression of the evidence; raising all available claims, issues and defenses; conducting effective cross-examination of the State's witnesses; and attempting to mitigate punishment if the client is convicted.

Id. at 477.

In this appeal, the petitioner argues that his counsel was ineffective for having failed to advise him of a possible defense to felony murder. The petitioner argues that in State v. Buggs, 995 S.W.2d 102 (Tenn. 1999), our supreme court ruled that the "intent to commit the underlying felony [for a felony murder] must exist prior to or concurrent with the commission of the act causing the death of the victim." Id. at 107. The petitioner argues that because he had no intention to rob the victim prior to the shooting, his trial counsel had the obligation to advise him of this potential defense and, had she done so, he would not have entered his guilty plea and would have insisted upon a trial. The petitioner also argues that his counsel had the obligation to advise him that self-defense was a potential defense to the charge of first degree murder before suggesting that he accept the terms of the plea agreement. He contends that the factual basis for the claim of self-defense was his belief that the victim was going to his car to retrieve a weapon and the fact that police later found a pocket knife in the possession of the victim during their investigation of the scene of the crime.

In Buggs, Buggs killed his girlfriend after an argument and then took all of her cash in order to purchase crack cocaine. On the next morning, he returned to his apartment, pawned some of the furniture, and left the state. Our supreme court ruled that our state had adopted the majority rule among the states, which required the felonious intent to be found prior to or at the same time as the killing rather than afterward:

> [I]n a felony-murder case, intent to commit the underlying felony must exist prior to or concurrent with the commission of the act causing the death of the victim.
>
> Proof that such intent to commit the underlying felony existed before, or concurrent with, the act of killing is a question of fact to be decided by the jury after consideration of all the facts and circumstances.

Id.

Although trial counsel admitted that she was unaware of the holding in this particular case and further acknowledged that she had not discussed with the petitioner the holding of this case as a possible defense, that does not necessarily mean that she was ineffective. While it would have been notable for her to have been aware of the ruling and to have pointed out the possibility that a jury might be persuaded that the petitioner had not formed any prior intent to rob the victim, the real question is whether, but for the omission, the petitioner would have rejected the plea agreement and chosen to go to trial.

It is our initial view that under these facts, it is unlikely that the performance of trial counsel was deficient. More importantly, however, the possibility is so remote that the petitioner would have

insisted upon trial that this court cannot say that the evidence preponderates against the post-conviction court's holding that the petitioner failed to establish by clear and convincing evidence that he would have chosen a trial had he been fully advised of the ruling in <u>Buggs</u>. The petitioner acknowledged that he was aware that Henderson intended to "short" or cheat the victim in the drug transaction. He had armed himself with a gun. The victim had no firearm. The petitioner admitted to police that he took the victim's wallet immediately after shooting the victim and that Henderson held the victim, who was obviously still alive, down as he did so. The petitioner made the same statement to his trial counsel. The petitioner was aware that other witnesses, including Henderson, were prepared to testify against him at trial. At least one witness was prepared to testify that the petitioner had announced that he planned to kill the victim before the drug transaction. Others were apparently prepared to say that he had bragged about his participation in the killing. That the petitioner shot the victim twice, stole his money, his CDs, his CD player, his speakers, and his identification card, and left him to bleed to death was particularly condemning evidence. It is highly unlikely with these circumstances that the jury would have inferred that the petitioner formed an intent to rob after the killing. He faced a potential sentence of life without the possibility of parole. When he entered his pleas of guilty, he expressed satisfaction with the performance of his trial counsel and he represented to the trial judge that he had been advised of his potential defenses. His co-defendant had just pled guilty and was prepared to testify against the petitioner had he chosen a trial. The petitioner also entered a plea of guilty to conspiracy to commit robbery of the victim, involving a prior plan and scheme, a crime he chose not to challenge in his petition for post-conviction relief; his participation in the conspiracy would tend to negate any claim that he did not form any intent to rob until after the death of the victim. In fact, all of the testimony suggests that the victim bled to death after the robbery and may have lived had the petitioner sought help.

The statutory basis for self-defense in Tennessee is as follows:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. . . .

Tenn. Code Ann. § 39-11-611(a).

Trial counsel explained that she did not discuss a defense of self-defense with the petitioner because he never indicated that he saw the victim in possession of a weapon. In his interview with the police, the petitioner said nothing that would suggest a viable self-defense claim. While police found the pocket knife at the crime scene, the blade was closed. The petitioner never saw the knife and never suggested that he felt threatened by that or any other kind of weapon in the possession of the victim. Under these circumstances, it would have been difficult indeed to have argued that the danger creating the belief of imminent death or serious bodily injury was "real or honestly believed

to be real at the time." Id. In our view, trial counsel cannot be faulted for having failed to discuss a defense without any reasonable factual basis existing for that defense.

The petitioner and trial counsel feared possible conviction for either first degree premeditated murder or felony murder and the state had a compelling case for each. He was also indicted for especially aggravated robbery and conspiracy to commit robbery. Again, the evidence suggests that the state had substantial evidence in support of each of these counts. Trial counsel elicited a reduced charge of second degree murder, a dismissal of the especially aggravated robbery charge, and concurrent sentences on the conspiracy plea. In context, this court is unable to say that the evidence preponderates against the post-conviction court's holding that there was no deficiency in performance. Moreover, this court is satisfied that the post-conviction court correctly ruled that the petitioner, regardless of any minimal omissions in discussing the various alternatives, would have accepted the terms of the plea agreement.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE